UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 21-106 (TJK) |
| JOSHUA CALVIN HUGHES, | |
| *Defendant*. | |

**MEMORANDUM ORDER**

In August 2022, Joshua Hughes pleaded guilty to Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2) for his conduct relating to the attack on the U.S. Capitol on January 6, 2021.  The Court sentenced him to a below-Guidelines term of 38 months' incarceration.  Hughes now seeks to reduce his sentence to 33 months under 18 U.S.C. § 3582(c)(2) because of a retroactively applicable amendment to the U.S. Sentencing Guidelines which provides for a two-level reduction in offense level for those defendants with no criminal history points who also meet several other criteria.  U.S.S.G. § 4C1.1.  The Court finds that Hughes is eligible for that adjustment and a reduced sentence, and that such a reduction is otherwise warranted after considering the relevant factors under 18 U.S.C. § 3553(a).  Thus, it will grant his motion and reduce his sentence to 33 months.

**I.    Background**

Hughes travelled to the District of Columbia from Montana with his brother to attend the "Stop the Steal" rally on January 6, 2021.  ECF No. 75 at 3.  After the rally, Hughes walked to the Capitol building and joined a crowd on the "northern set of stairs" that pushed past a line of law enforcement officers stationed at the top of the staircase.  *Id.*  Reaching the Upper West Terrace, Hughes was near the front of another crowd that was blocked by a final barrier of bike racks.  Gov't Exh. 1 to its Sentencing Memorandum, ECF No. 89, at 39:45–40:15.  After the crowd toppled

those bike racks, Hughes proceeded towards the Capitol. Gov't Exh. 2 at 50:01.

Hughes was among the first rioters to enter the Capitol, entering at about 2:13 p.m. through a window next to the Senate wing door that other rioters had broken. ECF No. 75 at 3–4. Once inside, Hughes walked toward his brother and other rioters who had kicked open the Senate wing door; the door broke open before Hughes arrived. *Id.* at 4. Hughes then continued walking northeast through the Capitol, eventually encountering Capitol Police Officer Eugene Goodman, who was "standing guard near a staircase leading up to the Senate Chamber." *Id.* He and his brother "followed close behind" other rioters who chased Officer Goodman up the staircase despite Officer Goodman's "repeated pleas to stop and back up." *Id.*

Once on the second floor, Hughes followed the other rioters and Officer Goodman into the Ohio Clock Corridor, where additional officers were present. ECF No. 75 at 4. Hughes's brother "was screaming and making aggressive gestures" toward the officers. *Id.* Hughes stayed in the Ohio Clock Corridor for a few minutes before leaving. *Id.* Later, at around 2:44 p.m., Hughes entered the Senate gallery and then made his way into the Senate chamber. *Id.* He left the Senate chamber and then exited the Capitol building at around 2:51 p.m. *Id.* at 4–5.

On August 25, 2022, Hughes pleaded guilty to Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2). At sentencing, the Court calculated Hughes's Guidelines range of 41–51 months, and imposed a below-Guidelines sentence of 38 months. On April 14, 2024, Hughes filed the pending motion, which he supplemented with help from counsel on May 30, 2024.[1]

---

[1] Hughes's original motion also bases his request for a 33-month sentence on an alternative ground. *See* ECF No. 101 at 3. He argues that under 18 U.S.C. § 3582(c)(1)(A), "extraordinary and compelling reasons" warrant such a reduction because in calculating his sentencing Guidelines, the Court applied—with no objection from him—the specific offense characteristic for substantial interference with the administration of justice, *see* U.S.S.G. § 2J1.2(b)(2), which the D.C.

## II. Legal Standard

Under 18 U.S.C. § 3582(c)(2), a defendant may move for a sentence reduction if he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The Court assesses such motions in two steps. *See United States v. Wyche*, 741 F.3d 1284, 1292 (D.C. Cir. 2014). First, the Court must determine whether the defendant is eligible for a reduced sentence and, if so, calculate the Guidelines range that would have applied to the defendant if the amendment had been in effect at the time of the initial sentencing. *Dillon v. United States*, 560 U.S. 817, 826–27 (2010). Except in situations not relevant here, the Court may not reduce a defendant's sentence below the bottom of the amended Guidelines range. *See* 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(b)(2)(A). Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon,* at 560 U.S. at 827. "[T]he defendant bears the burden" of proving that a sentencing reduction is appropriate. *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009).

## III. Analysis

### A. Hughes Qualifies for a Sentence Reduction Under Section 4C1.1

A defendant qualifies for a two-level adjustment under the amendment codified at Section 4C1.1 if "the defendant did not receive any criminal history points" and meets several other eligibility criteria. U.S.S.G. § 4C1.1(a)(1). If Hughes is eligible for the adjustment, his total offense

---

Circuit subsequently held did not apply under these circumstances in *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024). The Court need not reach this argument, because it grants him all the relief he seeks on other grounds. Still, the Court notes that after "considering the factors set forth in section 3553(a)," as it must, it would not find a reduction in sentence below 33 months warranted under 18 U.S.C. § 3582(c)(1)(A).

level would be reduced to from 22 to 20, and as a result, his Guidelines range would be reduced from 41–51 months to 33–41 months. *See* ECF No. 104 at 5. The parties agree that Hughes did not receive any criminal history points. The only criterion in dispute is whether he "use[d] violence or credible threats of violence in connection with [his] offense." U.S.S.G. § 4C1.1(a)(3).

The Guidelines do not define "violence" or "credible threats of violence," but courts in this district have interpreted these terms by looking to their plain meaning and contemporary dictionary definitions. Thus, "violence" typically means "[t]he use of physical force, typically accompanied by fury, vehemence, or outrage and unlawfully exercised with the intent to harm." *United States v. Bauer*, No. 21-cr-386 (TNM), ECF No. 195 at 4–5 (D.D.C. Jan. 29, 2024) (cleaned up); *see also United States v. Yang*, No. 23-cr-100 (JDB), 2024 WL 519962, at *4 (D.D.C Feb. 9, 2024). As for "credible threats of violence," that has been interpreted as "a believable expression of an intention to use physical force to inflict harm." *Bauer*, No. 21-cr-386, ECF No. 195 at 6; *see also Yang*, 2024 WL 519962, at *4 ("A 'credible' threat is one that offer[s] reasonable grounds for being believed or trusted.") (internal quotations omitted).

The Government does not argue that Hughes used actual violence in connection with his offense; it asserts only that he is ineligible under Section 4C1.1(a)(3) "because he used credible threats of violence against people and property . . . ." ECF No. 105 at 15. The Government then identifies three separate times it argues Hughes credibly threatened violence.

Before turning to those instances, the Court pauses to make a general observation. The parties spar over how much focus the Court should place on the conduct of those around Hughes and the totality of the circumstances surrounding the attack on the Capitol. *Compare* ECF No. 105 at 16 *with* ECF No. 106 at 2. The Court does not deny the important role of context in determining whether a defendant used violence or credible threats of violence in connection with an offense. Still, the focus of the Court's inquiry "turns on the actions of the defendant himself or herself, not

the actions of others." *Yang*, 2024 WL 519962, at *4. The Court must "evaluate with particularity" a defendant's individual conduct and determine whether that defendant *himself* "used credible threats of violence." *Bauer*, No. 21-cr-386, ECF No. 195 at 8. In other words, courts in this jurisdiction have repeatedly rejected a "guilt-by-association interpretation of § 4C1.1." *Id.* at 9.[2] This Court will do the same.

The Government first argues that Hughes used credible threats of violence while "position[ing] himself at the front of the mob [that] pushed the bike racks down and overran the final police line." ECF No. 105 at 17. But the video capturing this moment does not show Hughes touching the bike racks or any police officer. *See* Gov't Exh. 2 at 49:15–49:30; Gov't Exh. 3 at 10:22–10:40. Rather, to the extent it depicts him at all, it only shows him standing near the front of the crowd until the bike racks were toppled, at which point he moved around them toward the Capitol. *Id*. Hughes's mere presence at the bike racks does not amount to "a believable expression of an intention to use physical force to inflict harm." *Bauer*, No. 21-cr-386, ECF No. 195 at 6. Other courts have reached the same conclusion. For example, in *Yang*, the court applied Section 4C1.1 to a defendant at the Capitol on January 6 even though he was "near the front of the crowd opposing the line of officers." *Yang*, 2024 WL 519962, at *4. In fact, the defendant there made actual physical contact with officers and even briefly grabbed a baton. *Id.* Still, the court held that the defendant "did not act with the degree of aggression necessary to fairly characterize his actions

---

[2] *See also United States v. Hernandez*, No. 21-cr-445 (CKK), ECF No. 65 at 6 (D.D.C. Jan. 31, 2024) ("[I]t is clear that the insurrection as a whole was certainly violent, but it is not the violence of others or general crowd violence that is the focus of this Court's inquiry."); *United States v. Parks*, No. 21-cr-411 (APM), ECF No. 125 at 38–39 (D.D.C. Nov. 15, 2023) (explaining that while the defendant did "participate in the larger crowd" on January 6 and notwithstanding "the chaos and the mayhem of the day," "[t]he defendant did not use violence or credible threats of violence."); *Yang*, 2024 WL 519962, at *5 ("The Court thus rejects the government's violence-by-presence theory of § 4C1.1(a)(3).").

as 'violence'" and that "obstruction by itself does not equate to the use of violence." *Id.* So too here. Hughes did not touch any person or property, or threaten to do so, and his mere presence in the crowd did not reflect aggressive or threatening behavior. *See United States v. Hernandez*, No. 21-cr-445 (CKK), ECF No. 65 at 7–8 (D.D.C. Jan. 31, 2024) (finding no violence or credible threats for defendant who was merely present).

The Government next suggests that Hughes threatened violence by joining a "mob of men who assaulted Officer Goodman and threatened him with a spear, other weapons, and the pole of a Confederate flag." ECF No. 105 at 17. Once again, the Government focuses on the threatening behavior of others and lumps Hughes in with them because he was also present. But as already explained, the Court rejects this "violence-by-presence" theory. Once again, the Government does not identify any aggressive or threatening act of Hughes's during this incident. Indeed, the video reveals that Hughes walked *away* from Officer Goodman at several points and was not one of the rioters who forced Officer Goodman back or chased him up the stairs. *See* Gov't Exh. 5 at 0:50–1:30; *see also* ECF No. 105 at 9 (conceding that while Officer Goodman retreated up the stairs, "Hughes was not at the forefront").

Finally, the Government argues that while in the Ohio Clock Corridor, Hughes "used credible threats of violence" in ignoring a command to "leave, now" by Capitol Police Inspector Thomas Loyd and "instead march[ed] forward, displaying his fury, his outrage, his vehemence." ECF No. 105 at 18. Not so. The video shows that when Inspector Loyd gave that command—or at least when he gave it most clearly—Hughes had yet to enter the Ohio Clock Corridor. *See* Gov't Exh. 6 at 1:10–1:19. As far as the Court can tell, Hughes would not enter the corridor for another ten seconds or so. *See id.* The Government also characterizes Hughes as "angry and outraged" during this episode. ECF No. 105 at 10. But the video depicts Hughes as calm. At no point captured by the video does he shout at, gesture toward, or threaten the officers. *See* Gov't Exh. 7.

6

Even the Government's claim that Hughes "link[ed] arms" with his brother is somewhat misleading. ECF No. 105 at 18. The video shows Hughes standing with his arms by his side when Hughes's brother grabs his arm. *See* Gov't Exh. 7. The Government focuses much of its attention on the actions of Hughes's brother, explaining how he "was exceptionally angry, screaming, 'we are fucking mad!' and stomping his foot," ECF No. 105 at 10, and later, that his brother "can be heard screaming, 'There's a fucking army behind us! You guys don't want this! You don't fucking want this! And we are fucking mad! We are mad! This is my fucking house! This is my country!'" *Id*. True enough. But *Hughes* did no such thing.

Ultimately, the Government's theory in each of these circumstances boils down to an argument that because Hughes was present in or near a mob in which others were violent or acted in threatening ways, he too used credible threats of violence. For all the reasons explained, the Court is unconvinced. The Court finds that Hughes has met his burden of showing that he did not use violence or credible threats of violence in connection with his offense. Thus, he meets the Section 4C1.1(a)(3) criterion and is eligible for a sentence reduction under Section 4C1.1.

### B. The Section 3553(a) Factors Warrant a Sentence Reduction

Having concluded that Hughes is eligible for a sentence reduction, the Court next considers whether a sentence reduction is warranted under the Section 3553(a) factors, which it will not recount here. The Court's authority to reduce a term of imprisonment is discretionary. *See Dillon*, 560 U.S. at 827.

Many considerations the Court weighed in imposing a substantial, but still below-Guidelines, sentence of 38 months remain the same. For example, Hughes's sentence needs to reflect the seriousness of his offense. 8 U.S.C. § 3553(a)(2)(A). And as the Government emphasizes, his offense remains very serious, even if he qualifies for a Section 4C1.1 adjustment: he intended to obstruct a proceeding before Congress mandated by the Constitution, joined the mob, was one of

the first to enter the Capitol, and made it all the way to the Senate floor. Similarly, the sentence must deter similar criminal conduct, which remains important given the approaching presidential election. 18 U.S.C. § 3553(a)(2)(B). On the other hand, several factors remain in Hughes's favor, including that he has no prior criminal convictions and that he marshaled an unusually impressive array of letters of support from the community. On top of that, Hughes points out that since his sentencing he has been a model inmate and has even paid off his restitution while incarcerated. ECF No. 104 at 16. In any event, one of the factors the Court must also account for is the Guidelines. *See* 18 U.S.C. § 3553(a)(4). Given the recent amendment to Section 4C1.1, the Sentencing Commission's decision to make its effect retroactive, and after considering all the Section 3553(a) factors, the Court finds that Hughes's requested sentencing reduction from 38 to 33 months is warranted, and that such a sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

## IV.     Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendant's Motion for a Sentence Reduction, ECF No. 101, is **GRANTED**. A separate order will issue reflecting the sentence reduction.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 1, 2024